WU CHEN v. GESNER BERNADEL ET AL.
(AC 27101)

Schaller, Lavine and Pellegrino, Js.

Argued March 26—officially released June 12, 2007

*Sarah F. DePanfilis*, with whom, on the brief, was *Robert O. Hickey*, for the appellant (defendant).

*Opinion*

PELLEGRINO, J. The defendant Gesner Bernadel appeals from the judgment of the trial court granting the application for a prejudgment remedy[1] filed by the plaintiff, Wu Chen. On appeal, the defendant[2] claims

---

[1] The granting or denial of a prejudgment remedy is deemed a final judgment for the purposes of appeal. General Statutes § 52-278*l* (a).

[2] The plaintiff's application for a prejudgment remedy also named as a defendant Philippe Desrosiers and refers to him as the operator of the motor vehicle. The record indicates, however, that the operator of the motor vehicle was Max Desrosiers, not Philippe. Additionally, the defendant's brief states that the plaintiff did not pursue the application as to Philippe Desrosiers and that the current issues on appeal do not involve Philippe Desrosiers. We therefore refer in this opinion to Gesner Bernadel as the defendant.

that the court improperly concluded that he could be held liable for the plaintiff's injuries under the family car doctrine, which has been codified as General Statutes § 52-182,[3] because (1) he was not the owner of the car and exercised no control over the use of the car, and (2) the operator of the car was not a member of the defendant's family. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. On November 5, 2004, the defendant's son, Jhimy Bernadel, and a friend, Max Desrosiers, were driving to Connecticut from New York. As per Jhimy Bernadel's request, Desrosiers was driving the car, which was registered in the defendant's name. While at a toll booth in New York, the plaintiff got out of his car to inspect the car's muffler and was hit by the defendant's car. As a result of this incident, the plaintiff has undergone several surgeries on both of his legs, and his right leg eventually was amputated above the knee.

In April, 2005, the plaintiff filed an application for a prejudgment remedy, along with an affidavit and a direction for attachment of the defendant's property, in the amount of $2.5 million. The plaintiff claimed that the accident and his resulting injuries were caused by Desrosiers' negligence and that the defendant, as the registered owner of the vehicle, was vicariously liable.

On July 25, 2005, the court held a hearing on the plaintiff's application for a prejudgment remedy. In its revised memorandum of decision filed March 14, 2006,[4]

---

[3] General Statutes § 52-182 provides in relevant part: "Proof that the operator of a motor vehicle . . . was the husband, wife, father, mother, son or daughter of the owner shall raise a presumption that such motor vehicle . . . was being operated as a family car . . . within the scope of a general authority from the owner, and shall impose upon the defendant the burden of rebutting such presumption."

[4] The court's initial memorandum of decision, dated November 3, 2005, was revised due to a scrivener's error.

the court granted the plaintiff's application, authorizing him to attach the defendant's assets in the amount of $2.5 million. The court found: "Evidence indisputably established that [the defendant] was the owner of the car. . . . The court finds that the son had general authority to use the car for his own pleasure and convenience. . . . [T]he court concludes that the defendant . . . may be held liable for the alleged negligence of an operator delegated by his son to operate the family car at the pleasure and for the convenience of [his] son."[5] (Citations omitted.) This appeal followed. Additional facts will be set forth as necessary.

"This court's role on review of the granting of a prejudgment remedy is very circumscribed. It is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. In the absence of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Kinsale, LLC* v. *Tombari*, 95 Conn. App. 472, 475, 897 A.2d 646 (2006).

"A hearing on an application for prejudgment remedy is not a full-scale trial on the merits of the plaintiffs'

---

[5] The court also found that General Statutes § 52-183 was inapplicable to this case. Section 52-183 provides in relevant part: "In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. The defendant shall have the burden of rebutting the presumption."

claims . . . but rather concerns only whether and to what extent the plaintiff is entitled to have property of a defendant held in custody of the law pending final adjudication of the merits of the action. . . . [A]n appellate court is entitled to presume that the trial court acted properly and considered all the evidence." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Rapoport*, 80 Conn. App. 111, 115–16, 833 A.2d 926 (2003). "The [trial] court's role in such a hearing is to determine probable success by weighing probabilities. . . . [T]his weighing process applies to both legal and factual issues." (Internal quotation marks omitted.) Id., 117.

In this case, we must determine whether the court's conclusions that the defendant was the owner of the vehicle in question, that he maintained it as a family car for the benefit of his son and that the son had general authority to give permission to a third party, in this case Desrosiers, the alleged tortfeasor, to operate the vehicle, were reasonable. We agree with the court's findings and conclude that they were reasonable and not clearly erroneous.

I

We first address the issue of whether the defendant owned and maintained the vehicle as a family car in accordance with § 52-182. The court found that the evidence was indisputable that the defendant was the owner of the car. During the hearing on the application for a prejudgment remedy, the defendant testified that the car was registered in his name but attempted to deny "ownership" by arguing that he cosigned the loan for the car only so that his son would have a car,[6] that

---

[6] At this hearing, the son later testified that the defendant cosigned the loan for the car because he did not have sufficient credit worthiness to purchase the car.

the defendant never used the car and that his son was free to use the car as he pleased. We are not persuaded.

In his brief, the defendant argues that although the car was registered in his name, he was not the owner of the car because he did not maintain any control of the vehicle, and, therefore, the family car doctrine is inapplicable to the facts of this case. In support of his argument, the defendant relies on *Cook* v. *Nye*, 9 Conn. App. 221, 518 A.2d 77 (1986). In *Cook*, this court recognized that "when a car is maintained by its owner for the general use and convenience of his or her family, the *owner* is jointly and severally liable for the negligence of a family member, who, having general authority to drive the car, uses it negligently while embarked on a family purpose, that is, for the pleasure or convenience of the family as a unit, or of an individual member of it." (Emphasis in original; internal quotation marks omitted.) Id., 225. This court further noted: "This rule is grounded in the belief that one who chooses to conduct his or her activities through others is nonetheless required to conduct them so that third parties are not injured by a breach of any legal duty on the part of those acting for the principal while they are acting on behalf of and within the scope of authority granted by the principal. When a member of a family maintains a car for the pleasure, use and convenience of the family, and its purposes, he or she makes such pleasure and use a personal concern, *thereby making those family members who use or enjoy the car his or her agents, as if they were pursuing the affairs of the owner.*" (Emphasis added.) Id., 225–26.

The facts underlying *Cook* are similar to those in the present case. In that case, the defendant father was the registered owner and the insured on the vehicle that the defendant daughter was driving when the collision occurred. Id., 222–23. At the time of the incident, the defendant daughter resided with her parents. Id., 223.

The defendant father claimed that he was not the " 'real owner' " of the car, that the car was not being used for a family purpose because his daughter alone used the car, that she never needed her father's permission to do so, that she had exclusive possession of the car keys and that she maintained and serviced the vehicle with her own funds. Id., 223. This court noted, however, that "[a] parent's retention of title to a car has frequently been sufficient justification for application of the family car doctrine when the doctrine is otherwise applicable, *even if the vehicle has been completely paid for by the child in question and the child has beneficial ownership.*" (Emphasis added.) Id., 227. We further noted that this rule holds true as long as it has been "shown that the driver has received *general authority* from the owner to use the car for a family purpose, *that is, for the pleasure or convenience of the family or a member of it.*" (Emphasis added.) Id., 228. This court concluded that the defendant father did not satisfy his burden of proof to rebut the presumption provided under § 52-182 because he was the registered owner of the vehicle, and he lent his daughter money for the down payment on the car. Id., 227–28.

In the present case, at the hearing on the application for a prejudgment remedy, the defendant testified that he was the registered owner of the car and that the car was insured in his name as well as his son's name. He also testified that although he cosigned the loan for the car, he never drove the car and that his son used the car as he pleased. The record indicates that at the time the incident occurred, the son was living in the defendant's home. It is clear from the record that the defendant wanted his son to have a car for the son's convenience. The defendant testified that he wanted his son to have a car because his son worked and was also a student at the time.

On the basis of the rules and principles set forth in *Cook* v. *Nye*, supra, 9 Conn. App. 221, and our review of the record, we conclude that the court's finding that the defendant was the owner of the vehicle in question was not unreasonable. The defendant testified that the car was registered in his name and insured in his name. The defendant argues, however, that the car dealership where the vehicle was purchased handled the filing of the certificate of registration with the department of motor vehicles and that the dealership inadvertently registered the car in the defendant's name, rather than in his son's name. There was no testimony from the defendant about this alleged error, and the testimony from his son sheds very little light on this issue. The son testified: "My only disagreement is that . . . there are documents where it only says my name for the car. There is also a document where it says my name and my father's name under it. . . . I really don't understand how [registration] works or why my father's name is on it." Additionally, although the son testified that the car was purchased in the summer of 2002, approximately two and one-half years before the incident occurred, there was no testimony from the defendant or his son that any attempts were made by either party, during this span of time, to rectify this alleged error.[7]

Finally, contrary to the defendant's argument, he did in fact exercise a degree of control over his son's use of the car, by *granting* his son general authority to use the vehicle as he pleased. We note that had it not been for the defendant's assistance, the son would not have been able to get the car. It was not until the defendant

[7] It is well settled that "[a]n appellate court cannot find facts or draw conclusions from primary facts found, but may only review such findings to see whether they might be legally, logically and reasonably found. . . . The duty of providing us with a record adequate to review claims, including those of a factual nature, rests with the appellant." (Citation omitted; internal quotation marks omitted.) *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 543, 651 A.2d 1302 (1995).

granted general authority to his son that he relinquished full control over his son's use of the car, and, in accordance with *Cook*, the son became an agent of the defendant. See *Cook* v. *Nye*, supra, 9 Conn. App. 225–26. As such, any use or enjoyment the son received from the car was as an agent of the defendant. See id. ("[w]hen a member of a family maintains a car for the pleasure, use and convenience of the family . . . he or she makes such pleasure and use a personal concern, *thereby making those family members who use or enjoy the car his or her agents, as if they were pursuing the affairs of the owner*" [emphasis added]). The defendant, therefore, is liable for any injuries to third parties, resulting from the negligent conduct or breach of duty by his agent, who was acting within the scope of the general authority granted to him by the defendant. See id. On the basis of the foregoing, we conclude that the court's findings were not clearly erroneous.

II

The defendant's final claim is that the family car doctrine is not applicable because Desrosiers, who is not a member of the defendant's family, was driving the car at the time of the incident, rather than the defendant's son, and that the defendant, therefore, could not be subjected to liability under the family car doctrine. We disagree.

Our Supreme Court was presented with a similar situation in *Dibble* v. *Wolff*, 135 Conn. 428, 65 A.2d 479 (1949). In that case, the defendant father was the owner of a car driven by his daughter, who at the time was married and did not reside with her parents. Id., 431. On the day of the incident, the daughter and her mother were returning to the parents' home after a shopping trip, when the two were involved in a collision due to the daughter's negligence. Id., 432. Our Supreme Court stated that the issue to be resolved in that case was as

follows: "The ultimate question is . . . whether under the circumstances shown . . . the fact that the defendant's daughter was not a member of [the defendant's] household renders the family car doctrine inapplicable. . . . Assuming for the purposes of this decision that the defendant could not be held liable on the theory that his daughter was a member of the family within the family car doctrine, it does not necessarily follow that no recovery can be had . . . . The question decisive of this appeal is whether on this record the daughter's negligence was that of her mother within the doctrine." (Citations omitted.) Id., 433–34. The court found that the mother's status as a member of her husband's household was sufficient to invoke the family car doctrine because, when the defendant intended that the vehicle be used for his wife's pleasure and convenience, he gave his wife general authority to delegate the responsibility of operating the vehicle to their daughter. Id., 434–35.

Similarly, in the present case, Desrosiers, although not a member of the defendant's household, was authorized by the defendant's son, a member of the defendant's household, to operate the vehicle, because the son had general authority from his father to use the car for his own pleasure and convenience. In light of the evidence in the record, we conclude that Desrosiers' negligence could be considered that of the defendant's son under the family car doctrine. See *Dibble* v. *Wolff*, supra, 135 Conn. 434–35.

Finally, in its memorandum of decision, the court cited *Costanzo* v. *Sturgill*, 145 Conn. 92, 139 A.2d 51 (1958), in support of its finding that the son could give a third party permission to operate the family car because he had general authority to use the car for his pleasure and convenience. In *Costanzo*, the defendant father gave his son a vehicle that he owned so that the son could more conveniently travel from the father's

farm in Maryland to a naval base where the son was stationed. Id., 93. When he gave the car to his son, the father also gave his son instructions regarding its use. The son was told that the car was to be used solely for the purpose of travel to and from the farm and that he could not allow anyone else to drive the car or ride in the car. Id. The son exceeded the scope of the limited authority granted to him by his father when he used the car to take himself and several friends to a party in New Jersey and then asked one of the friends, the other defendant in the case, to drive him home from the party because he was not familiar with the roads in New Jersey. Id., 93–94. The friend agreed, and shortly thereafter, he drove the car into a tree in Connecticut. Id., 94. The trial court concluded that the father could not be held liable for the friend's negligence in driving the car. Id. When our Supreme Court affirmed the judgment, it reasoned: "Before [the son], by permitting [the friend] to operate the car, could subject the owner, the [father], to liability, [the son] would have had to have *general authority* from his father to use the car for pleasure and convenience. . . . The court did not find that any such general authority was given. Indeed, it found that the car was entrusted by the [father] to his son for a specific and limited purpose . . . ." (Citations omitted; emphasis added.) Id., 95.

In the present case, the defendant's son made the decision to delegate the responsibility of driving in New York to his friend, Desrosiers. The stated reason for this decision was his fear of the possibility of being stopped by the police and being arrested because of an outstanding ticket that he currently was contesting in New York. Unlike the father in *Costanzo*, the defendant in the present case did not give his son specific limiting instructions with regard to use of the car. In light of our Supreme Court's reasoning in *Costanzo*, the defendant in the present case may be subjected to liability

for Desrosiers' negligence in driving the car because, as the trial court expressly found in its memorandum of decision, the defendant's son had general authority to use the car for his own pleasure and convenience. As previously noted, when the court's findings are supported by the record, it is not our role to duplicate its weighing process. Accordingly, the court's findings were not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.