CREATIVE MASONRY AND CHIMNEY, LLC *v.*
NEIL JOHNSON
(AC 33948)

DiPentima, C. J., and Gruendel and Alvord, Js.

Argued January 9—officially released April 23, 2013

*Neil Johnson,* pro se, the appellant (defendant).

*Jon L. Schoenhorn,* for the appellee (plaintiff).

*Opinion*

PER CURIAM. The defendant, Neil Johnson, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Creative Masonry & Chimney, LLC, on its claims of breach of contract, fraud and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On appeal, the defendant claims that the court erred by (1) prohibiting him from filing a motion for summary judgment, (2) admitting evidence pertaining to his disciplinary proceeding, (3) declining to set aside the verdict and (4) awarding punitive damages. We affirm the judgment of the trial court.

The following facts were set forth in the trial court's memorandum of decision with respect to the parties' various postverdict motions. "What should have been a simple breach of contract action for nonpayment of work done by the plaintiff on the defendant's house morphed into a two year lawsuit, fueled mainly by the

defendant's conduct throughout the proceedings and trial, raising claims that were baseless and at times all out lies. What makes this even more egregious is that the defendant is an attorney admitted to practice law in this state.

"The suit arises out of a written contract between the plaintiff, through its principal, Edward Sziabowski, and the defendant, Neil Johnson, to repair and renovate a chimney and fireplace at the defendant's home. The defendant hired the plaintiff to do the work and agreed to pay the plaintiff $13,500 pursuant to the written contract. During the course of the work, he falsely told the plaintiff that he was transferring money from an investment account to pay for the work, in order to induce the plaintiff to continue with and complete the work. Upon completion of the work, the defendant made no complaints about the work, but did not pay a balance owed under the contract of $5000. . . .

"The defendant's behavior during the time the plaintiff was attempting to collect the balance owed was nothing short [of] outrageous. For example, in one instance when the defendant answered his cell phone identifying himself as Neil Johnson, when he discovered it was Sziabowski calling to collect his money, he began to speak in a falsetto tone, and said Neil Johnson was not available. . . .

"Moreover, the evidence demonstrates that the defendant lied not only to the plaintiff, but to the jury as well. Further examples of the defendant's egregious actions are that he made false statements to the plaintiff in order to hinder the plaintiff's just collection of a debt; baseless accusations that the plaintiff was employing 'illegal aliens' and [that he] would be referring the plaintiff for such violations of federal and state law. . . .

"The defendant, a practicing attorney, has been referred to the Disciplinary Counsel for his actions

related to this matter. Admitted at this hearing was the order by the court in that action, together with an affidavit by the defendant, wherein he admitted to threatening to 'present criminal charges relating to the immigration status of the plaintiff's employees' and using his position as an attorney to intimidate the plaintiff 'to avoid honoring [his] obligation.' "

The court also set forth the following procedural history. "On June 28, 2011, a jury returned a verdict in favor of the plaintiff . . . against the defendant . . . on counts of breach of contract, fraud, and violation of [CUTPA]. On the fraud count and the CUTPA [count], the jury found that the plaintiff is entitled to punitive damages. Compensatory damages were assessed in the amount of $7700. On the verdict forms, the court indicated that it would make the determinations of any punitive damages. The court accepted and recorded the verdict on June 28, 2011.

"On July 7, 2011, the defendant filed a motion to set aside the verdict and either enter a verdict for the defendant or order a new trial. On July 22, 2011, the plaintiff filed a motion for punitive damages, as well as attorney's fees. On July 28, 2011, the plaintiff filed a motion for prejudgment interest, followed by a bill of costs. The court held an evidentiary hearing on September 8, 2011, to address the motions." The court denied the defendant's motion to set aside the verdict, and rendered judgment for the plaintiff, awarding $7700 in compensatory damages; $23,100 in punitive damages; $56,380 in attorney's fees; $1222.25 in costs; $1912.50 in expert costs; and $2754 in prejudgment interest. This appeal followed.

I

The defendant first argues that the court improperly prohibited him from filing a motion for summary judgment. We decline to review this claim because the defendant provided an inadequate record.

The record reveals the following procedural history. On May 28, 2010, the court, *Hon. William M. Shaughnessy, Jr.*, judge trial referee, entered a scheduling order, which provided that the parties were required to file any motions for summary judgment on or before April 30, 2011. On March 9, 2011, the court, *Pittman, J.*, denied the plaintiff's motion for permission to file a motion for summary judgment. On April 29, 2011, the defendant filed a motion for summary judgment. In response, the plaintiff filed an objection to the defendant's motion for summary judgment, arguing that allowing the defendant to file a motion for summary judgment would be unfair in light of the court's previous order denying the plaintiff the opportunity to file a motion for summary judgment, and that the defendant did not seek permission from the court to file a motion for summary judgment pursuant to Practice Book § 17-44. On May 16, 2011, Judge Pittman issued an order sustaining the plaintiff's objection and the court subsequently denied the defendant's motions for articulation and reargument of its order.

"It is the responsibility of the appellant to provide an adequate record for review." Practice Book § 61-10. Practice Book § 63-8 provides in relevant part that "the appellant shall . . . order, using Form JD-ES-38, from the official reporter a transcript . . . of the parts of the proceedings not already on file which the appellant deems necessary for the proper presentation of the appeal. Such order shall specify the case name, docket number, judge's name(s), and *hearing date(s), and include a detailed statement describing the parts of the proceedings of which a transcript has been ordered* . . . ." (Emphasis added.) Form JD-ES-38 reiterates Practice Book § 63-8, requiring the person ordering the transcript to "[d]escribe in detail including specific dates, the parts of the proceedings for which a transcript is being ordered."

The defendant, on Form JD-ES-38, merely requested "trial + short calendar proceedings." He did not provide hearing dates for which the transcript was ordered, and, as a result, the record does not contain a transcript of any of the proceedings before Judge Pittman. Facial compliance with a scheduling order does not permit this court to speculate as to the validity of the reasons why a trial judge would sustain an objection to the defendant's filing of a motion for summary judgment. We therefore decline to review this claim on the basis of an inadequate record.

## II

The defendant next argues that the court improperly permitted evidence pertaining to his disciplinary hearing before the Statewide Grievance Committee (grievance committee) to be presented to the jury. We decline to review this claim because it is briefed inadequately.

The defendant argues that five exhibits, which were related to his disciplinary hearing before the grievance committee, were improperly presented to the jury in this case: (1) a recording of a message that the defendant left on the plaintiff's voice mail on June 30, 2008; (2) a written transcription of that voice mail message;[1]

---

[1] The transcription of the voice mail message provides: "Uh, Hi Ed, it's Neil Johnson. Uhh, I figure I've made enough money so far this weekend to—and it's time to call you back. Um, every time you called me, uhh, to talk about money owed, uh, I get a hundred bucks plus attorney's fees. So Friday you've called me sixty-five times, so you owe me sixty-five hundred dollars plus attorney's fees so let's call it ten grand even. Ummm, and as far as the, uh, project goes, um, it obviously didn't comply with the Home Improvement Act, which I checked on, because there's two contracts and they're backdated and all those other nice improprieties. But I think the best part is that you were use—using illegal aliens as construction workers. Uhh, which is a violation of state and federal law. So, I'll appreciate it if you could just, uh, send me a check for say, ten thousand dollars and we'll call it even. And, uh, and uh you could apologize too while we're at it. So I appreciate you harassing me all weekend because I just made myself ten grand, but I've really had enough. So thanks and, uh, have a good day. Buh-bye."

(3) the transcript of the defendant's testimony during his hearing before the grievance committee on March 4, 2010; (4) the decision of the grievance committee issued on May 14, 2010;[2] and (5) the decision of the reviewing committee to affirm the grievance committee's decision. He further argues that the court should not have permitted the testimony of chief disciplinary counsel Patricia King under the same theory that all evidence pertaining to the hearing before the grievance committee should have been precluded.[3]

On June 10, 2011, the defendant filed a motion in limine seeking to "preclude the introduction through documents or testimony of any reference to Grievance Committee proceedings and or findings of local panels."[4] Prior to commencement of the trial proceedings, the court heard argument on the motion. During the course of the trial, the material the defendant sought to preclude was presented to the court in different forms and received different treatment from the court. For example, the court permitted King to testify and refer to the transcript of the defendant's testimony at his grievance committee hearing, precluded the decision issued by the grievance committee, and admitted as full exhibits the voice mail message and the written transcription of that voice mail message.

Practice Book § 60-5 permits a defendant to preserve an evidentiary claim for appeal by way of a motion in

---

[2] The grievance committee found, by clear and convincing evidence, that the defendant violated the following Rules of Professional Conduct: Rule 3.4 (7)—threatening to present criminal charges solely to obtain an advantage in a civil matter; Rule 8.4 (4)—engaging in conduct prejudicial to the administration of justice; and Rule 8.4 (3)—engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

[3] The defendant does not argue that the plaintiff improperly used as impeachment evidence the defendant's former testimony in an unrelated disciplinary hearing in which the grievance committee found that the defendant misappropriated client funds and lied to a Superior Court judge.

[4] The defendant filed two other motions in limine, which are not subject to this appeal.

limine. See *Cima* v. *Sciaretta*, 140 Conn. App. 167, 173 n.5, 58 A.3d 345 (2013); *State* v. *Antwon W.*, 118 Conn. App. 180, 194–95, 982 A.2d 1112 (2009), cert. denied, 295 Conn. 922, 991 A.2d 568 (2010). "When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix [asserting such error] shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling." Practice Book § 67-4 (d) (3). "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Adams*, 139 Conn. App. 540, 552 n.7, 56 A.3d 747 (2012).

The defendant's claim is properly preserved pursuant to Practice Book § 60-5, but the defendant does not direct the court to, let alone provide, the requisite detailed statement. This claim, therefore, is inadequately briefed, and "[w]e do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Grasso* v. *Connecticut Hospice, Inc.*, 138 Conn. App. 759, 768, 54 A.3d 221 (2012).

III

The defendant next claims that the verdict contained several errors and that the court, therefore, improperly denied his motion to set aside the verdict. Specifically, the defendant contends that the verdict erroneously concluded that (1) the plaintiff did not violate the Home Improvement Act, General Statutes § 20-418 et seq., (2) the defendant breached the home improvement contract and (3) the defendant violated CUTPA. We disagree.

It is uncontested that the plaintiff and the defendant entered into a contract whereby the plaintiff would repair and renovate a chimney at the defendant's home, that a building permit to perform the work at the defendant's home never was obtained and that the defendant did not pay the plaintiff the amount due pursuant to the terms of the contract. Facts about the formation of the contract, why the building permit never was obtained and whether the defendant used his position as an attorney to threaten the plaintiff, however, were contested. The contested facts were central to the defendant's arguments to the trial court as to why the verdict should be set aside.

"Our standard of review of the court's refusal to grant [motions for directed verdicts and to set aside verdicts] requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony. . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . . Our standard of review, where the trial court's action on a motion to set aside a verdict is challenged, is whether the trial court clearly abused its discretion. . . . The decision to set aside a verdict is a matter within the broad legal discretion of the trial court and it will not be disturbed unless there has been a clear abuse of that discretion." (Internal quotation marks omitted.) *Kosiorek* v. *Smigelski*, 138 Conn. App. 695, 707–708, 54 A.3d 564 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013).

Here, the jury reasonably and legally could have reached the conclusion that it did. The court therefore did not abuse its discretion in denying the defendant's motion to set aside the verdict.

## IV

The defendant next claims that the court erred in its award of punitive damages pursuant to his violation of CUTPA. We disagree.

The defendant claims that the award of punitive damages was based, in part, on evidence that the court should not have considered because it was "solely within the province of the [grievance committee] . . . ." The court, however, stated in its memorandum of decision that "[a]lthough there was no objection to the admission of the [grievance committee's] order and affidavit [containing statements the defendant made at the disciplinary proceeding], the court [did] not rely on these in determining punitive damages. The court [based] its determination of punitive damages upon the evidence at trial, as well as the jury's findings of fact, and verdict."

Under CUTPA, "[t]he court may, in its discretion, award punitive damages . . . ." General Statutes § 42-110g (a). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987). "Awarding punitive damages and attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Citations omitted.) Id.

The court found "that the defendant's conduct reflects a reckless indifference to the rights of the plaintiff, and an intentional violation of its rights justifying an award of punitive damages. There is no question that the conduct by the defendant is offensive and qualif[ies] for an award of punitive damages." The court's

award of punitive damages in this case was not an abuse of its discretion.

The judgment is affirmed.